IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

VICTORIA CHANCY,

    Plaintiff,

vs.

LOVING HEART CAREGIVERS,
LLC, LATOYA NELSON, and
TIERRA BROWN,

    Defendants.

:
:
:
:
:
:
:
:
:
:
:

Civil Action File No.

---

## COMPLAINT

---

Plaintiff Victoria Chancy ("Chancy") brings this Complaint against Defendants Loving Heart Caregivers, LC ("Loving Heart"), Latoya Nelson ("Nelson"), and Tierra Brown ("Brown") and shows the Court as follows:

## 1.   INTRODUCTION

1.

Loving Heart employed Chancy as a home health aide from June 28, 2021 through October 1, 2021 (hereinafter the "Relevant Time Period") where she was misclassified as an independent contractor. Defendants failed to pay Chancy the overtime premium during her employment and further failed to pay her at all during the last month of her employment thus violating the Fair Labor Standards Act.

2.

In addition to her federal causes of action, Chancy asserts pendent state law claims which arise out of the same set of operating facts as her federal claims. These are (1) breach of contract, (2) quantum meruit and (3) promissory estoppel.

(a) **Jurisdiction and Venue**

3.

This Court has subject matter jurisdiction over the present action under 29 U.S.C. § 216(b) and 28 U. S.C § 1331, because this case arises under the FLSA, a federal statute that affects interstate commerce. This Court has supplemental jurisdiction over Plaintiffs' claims arising under Georgia law under 28 U.S.C. §1367(a).

4.

Venue properly lies in the Northern District of Georgia under 28 U.S.C. § 1391 because Loving Heart conducts business in Georgia, within this judicial district and a substantial portion of the events giving rise to the claims herein arose in this judicial district.

(b) **The Parties**

5.

Plaintiff Chancy resides in Fulton County, Georgia.

6.

Defendant Loving Heart employed Chancy as a home health aide from June 28, 2021 through October 1, 2021.

7.

At all times material hereto, Chancy has been an "employee" of Loving Heart within the meaning of 29 U.S.C. § 203(e)(1).

8.

Defendant Loving Heart is a domestic limited liability company organized under the laws of the State of Georgia.

9.

At all times material hereto, Loving Heart was an "employer" of Chancy within the meaning 29 U.S.C. §203(d).

10.

Loving Heart is subject to the personal jurisdiction of this Court.

11.

Loving Heart may be served with process through its registered agent Latoya Nelson located at 9482 Lakeview Road, Union City, GA, 30291.

12.

At all times material hereto, Chancy was an "employee" of Nelson within the meaning of 29 U.S.C. § 203(e)(1).

13.

Nelson resides in Henry County, Georgia.

14.

At all times material hereto, Nelson was an "employer" of Chancy within the meaning of 29 U.S.C. §203(d).

15.

Nelson is subject to the personal jurisdiction of this Court.

16.

Nelson may be served with process at 9482 Lakeview Road, Union City, GA, 30291 or wherever she may be located.

17.

At all times material hereto, Chancy was an "employee" of Brown within the meaning of 29 U.S.C. § 203(e)(1).

18.

Brown resides in Henry County, Georgia.

19.

At all times material hereto, Brown was an "employer" of Chancy within the meaning of 29 U.S.C. §203(d).

20.

Brown is subject to the personal jurisdiction of this Court.

21.

Brown may be served with process at 1198 Creek Crossing Drive, McDonough, GA 30252 or wherever she may be located.

**(c) Individual Coverage**

22.

During the Relevant Time, Chancy regularly operated a telephone and a computer while performing services on behalf of Loving Heart.

23.

During the Relevant Time Period, Chancy was "engaged in commerce" as employees of Loving Heart within the meaning of 29 U.S.C. §203(s)(1)(A) and (B).

**(d) Enterprise Coverage:**

24.

At all times during the Relevant Time Period, Loving Heart was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A)(i) and (ii) and (s)(1)(B).

25.

During 2021, Loving Heart had two or more "employees engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

26.

During the Relevant Time Period, Chancy and other employees of Loving Heart handled goods which moved in interstate commerce in the furtherance of the commercial purpose of Loving Heart including, but not limited to, residential and office furniture, phones, computers, and office supplies.

27.

During 2021, Loving Heart had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" within the meaning of 29 U.S.C. § 203(s)(1)(A).

28.

During 2021, Loving Heart had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

29.

At all times during the Relevant Time Period, Loving Heart has been an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of 29 U.S.C. § 203(s)(1).

**(e) Misclassification as an Independent Contractor**

30.

Throughout the Relevant Time Period, Loving Heart classified Chancy as an independent contractor.

31.

Throughout the Relevant Time Period, Loving Heart exercised control over the time that Chancy worked.

32.

Throughout the Relevant Time Period, Loving Heart exercised control over the manner in which Chancy worked.

34.

Throughout the Relevant Time Period, Chancy did not solicit customers on her own behalf.

35.

Throughout the Relevant Time Period, Chancy's efforts were directed at serving the customers, employees, and agents of Loving Heart.

36.

Throughout the Relevant Time Period, Loving Heart provided Chancy with training for the position she held.

37.

Throughout the Relevant Time Period, Chancy did not advertise on her own behalf in connection with the type of services she performed for Loving Heart.

38.

Throughout the Relevant Time Period, Chancy did not make any significant investments into her work such that she shared any significant risk of loss.

39.

Throughout the Relevant Time Period, Loving Heart bore all costs associated with advertising, marketing, and promoting the business of Loving Heart.

40.

Throughout the Relevant Time Period, Chancy was economically dependent on Loving Heart for her livelihood.

41.

Throughout the Relevant Time Period, Chancy did not exercise independent business judgment in connection with her work for Loving Heart.

42.

Throughout the Relevant Time Period, Loving Heart did not permit Chancy to subcontract out her work or hire employees to perform her job duties.

43.

Throughout the Relevant Time Period, Loving Heart negotiated contracts and/or agreements for the clients that Chancy served without input or direction from Chancy.

44.

Throughout the Relevant Time Period Chancy's opportunity for profit or loss did not depend on Chancy's managerial skill.

45.

Throughout the Relevant Time Period, the work that Chancy performed for Defendants did not require a special skill.

46.

Throughout the Relevant Time Period, Chancy was required to follow policies and procedures created by Loving Heart.

47.

Throughout the Relevant Time Period, Chancy worked for Loving Heart on a consistent and full-time basis.

48.

Throughout the Relevant Time Period, Loving Heart's sole business was providing home health services to its clients.

49.

Throughout the Relevant Time Period, the work performed by Chancy was an integral part of Loving Heart's business.

50.

Throughout the Relevant Time Period, Loving Heart misclassified Chancy as an independent contractor.

51.

Throughout the Relevant Time Period, Chancy was an "employee" of Loving Heart within the meaning of 29 U.S.C. § 203(e)(1).

52.

Throughout the Relevant Time Period, Loving Heart was an "employer" of Chancy within the meaning of 29 U.S.C. §203(d).

**(f) Statutory Employers**

53.

At all times during the Relevant Time Period, Nelson was an owner and manager of Loving Heart.

54.

At all times during the Relevant Time Period, Nelson exercised operational control over Chancy's work activities.

55.

At all times during the Relevant Time Period, Nelson managed the day-to-day operation of the Loving Heart facility in which Chancy worked.

56.

At all times during the Relevant Time Period, Loving Heart vested Nelson with supervisory authority over Chancy.

57.

At all times during the Relevant Time Period, Nelson exercised supervisory authority over Chancy.

58.

At all times during the Relevant Time Period, Nelson scheduled Chancy's working hours or supervised the scheduling of Chancy's working hours.

59.

At all times during the Relevant Time Period, Nelson exercised authority and supervision over Chancy's compensation.

60.

At all times during the Relevant Time Period, Brown was an owner and/or operator of Loving Heart.

61.

Brown interviewed and hired Chancy on behalf of Loving Heart.

62.

At all times during the Relevant Time Period, Brown exercised operational control over Chancy's work activities.

63.

At all times during the Relevant Time Period, Brown managed the day-to-day operation of the Loving Heart facility in which Chancy worked.

64.

At all times during the Relevant Time Period, Loving Heart vested Brown with supervisory authority over Chancy.

65.

At all times during the Relevant Time Period, Brown exercised supervisory authority over Chancy.

66.

At all times during the Relevant Time Period, Brown scheduled Chancy's working hours or supervised the scheduling of Chancy's working hours.

67.

At all times during the Relevant Time Period, Brown exercised authority and supervision over Chancy's compensation.

**(g)  No FLSA Exemptions are Applicable**

68.

At all times material hereto, Chancy was not exempt from the minimum wage requirements of the FLSA by reason of any exemption.

69.

At all times during the Relevant Time Period, Chancy was not exempt from the maximum hour requirements of the FLSA by reason of any FLSA exemption.

70.

At all times during the Relevant Time Period, Loving Heart did not employ Chancy in a bona fide professional capacity within the meaning of 29 USC § 213 (a)(1).

71.

At all times during the Relevant Time Period, Loving Heart did not employ Chancy in a bona fide administrative capacity within the meaning of 29 USC § 213 (a)(1).

72.

At all times during the Relevant Time Period, Loving Heart did not employ Chancy in a bona fide executive capacity within the meaning of 29 USC § 213 (a)(1).

73.

At all times during the Relevant Time Period, Chancy did not supervise two or more employees.

74.

At all times during the Relevant Time Period, Loving Heart did not employ Chancy in the capacity of an "outside salesman" so as to be exempt from the minimum and maximum hour requirements of 29 USC § 213 (a)(1).

**(h) Additional Factual Allegations**

75.

Living Care employed Chancy as a home health aide.

76.

Chancy's primary duties included, but were not limited to, documenting clients' activities and changes in routine; taking clients to shop and run errands; transporting

clients to and from medical appointments; performing light housekeeping duties; and reminding clients to take their medication(s).

77.

Loving Heart paid Chancy $13.00 per hour for her work as a home health aide.

78.

During the Relevant Time Period, Loving Heart scheduled Chancy to work five (5) days per week.

79.

During the Relevant Time Period, Chancy generally worked from 8:00 a.m. until 4:00 p.m. during each work shift, Monday through Friday.

80.

During the Relevant Time Period, Chancy generally worked at one client location from 8:00 a.m. until 12:00 p.m. and then traveled to the next client location where she worked until at least 3:30 p.m.

81.

During the Relevant Time Period, Loving Heart only compensated Chancy for the time that she was physically with a client.

82.

During the Relevant Time Period, Loving Heart failed to compensate Chancy for the 30 minutes she drove between client locations during each workday.

83.

During the period from Chancy usually worked 42.5 hours during most work weeks, including the time she spent traveling between client locations each workday.

84.

During the Relevant Time Period, Loving Heart paid Chancy every two (2) weeks.

85.

Loving Heart failed to pay Chancy any wages at all for the last two (2) pay periods (*i.e.* four weeks) she worked on behalf of Loving Care from approximately September 1, 2021 through October 1, 2021.

86.

Throughout the Relevant Time Period, Loving Heart required that Chancy submit time sheets for payroll.

87.

Throughout the Relevant Time Period, Chancy submitted her time sheets to Defendants Nelson and/or Brown.

88.

During the Relevant Time Period, Defendants were aware of the actual number of hours Chancy worked during each work week.

89.

Defendants knew or should have known that the FLSA applied to Chancy.

90.

Section 6 of the FLSA (29 U.S.C. § 206) requires that Loving Heart compensate Chancy at a rate of no less than $7.25 per hour for every hour worked in a work week.

91.

Defendants knew or should have known that the Section 6 of the FLSA requires that Defendants compensate Chancy at a rate of at least $7.25 per hour for every hour worked in a work week.

92.

During the period from September 1, 2021 through October 1, 2021, Loving Heart failed to compensate Chancy at a rate of $7.25 per hour for each hour she worked.

93.

During the period from September 1, 2021 through October 1, 2021, Loving Heart willfully failed to compensate Chancy at a rate of $7.25 per hour for each hour she worked.

94.

Section 7 of the FLSA, 29 U.S.C. § 207, requires that Defendants compensate Chancy at a rate of one–and–one–half times her regular rate for all time worked in excess of forty (40) hours in a work week.

95.

Defendants knew or should have known that the Section 7 of the FLSA requires that Defendants compensate Chancy a premium for all time worked in excess of forty hours in a given workweek.

96.

During the Relevant Time Period, Chancy regularly worked more than forty (40) hours during a given workweek.

97.

During the Relevant Time Period, all of Chancy's working efforts were directed at serving Loving Heart's customers.

98.

During the Relevant Period, Defendants failed to pay Chancy at one-and-one-half times her regular rate for time worked in excess of forty (40) hours in any and all workweeks.

99.

During orientation with Loving Care, Chancy was advised that in addition to her hourly rate of pay, Loving Heart would pay her for mileage driven.

100.

Loving Heart promised to pay Chancy for mileage at a rate of $0.56 per mile for transporting clients to and from medical appointments, shopping and running errands.

101.

During the Relevant Time Period, Chancy drove a minimum of 20 miles per week transporting clients to and from medical appointments, shopping and running errands.

102.

During the Relevant Time Period, Loving Care was aware that Chancy incurred mileage each work week transporting clients to and from medical appointments, shopping and running errands.

103.

During the Relevant Time Period, Loving Care failed to compensate Chancy for any mileage she drove on behalf of Loving Care's clients.

## COUNT 1 - FAILURE TO PAY MINIMUM WAGE AGAINST ALL DEFENDANTS

104.

The allegations in paragraphs 1-103 above are incorporated herein by reference.

105.

At all times material hereto, Chancy has been an employee covered by the FLSA and entitled to the minimum wage protections set forth 29 U.S.C. § 206(a).

106.

During the period from approximately September 1, 2021 through October 1, 2021, Defendants failed to pay Chancy any wages whatsoever.

107.

From September 1, 2021 through October 1, 2021, Defendants failed to compensate Chancy at an hourly rate above or equal to the minimum wage as established in accordance with Section 6 of the FLSA.

108.

From September 1, 2021 through October 1, 2021, Defendants willfully failed to compensate Chancy at an hourly rate above or equal to the minimum wage as established in accordance with Section 6 of the FLSA.

109.

As a result of the underpayment of minimum wages as alleged above, Chancy is entitled to payment of minimum wages in an amount to be determined at trial, in accordance with 29 U.S.C. § 216(b).

110.

As a result of the willful underpayment of minimum wages as alleged above, Chancy is entitled to liquidated damages in accordance with 29 U.S.C. § 216(b),

declaratory relief and reimbursement of her costs of litigation, including her reasonable attorneys' fees pursuant to 29 U.S.C. § 216(b).

### 2.    COUNT 2 - FAILURE TO PAY OVERTIME AGAINST ALL DEFENDANTS

111.

The allegations in paragraphs 1-103 above are incorporated herein by reference.

At all times during the Relevant Time Period, Chancy was an employee covered by the FLSA and entitled to the overtime protections set forth in FLSA § 7(a), 29 U.S.C. § 207(a).

112.

During the Relevant Time Period, Chancy regularly worked in Defendants' employ in excess of forty (40) hours during each work week.

113.

During the Relevant Time Period, Defendants failed to pay Chancy at one-and-one-half times her regular rate for time worked in excess of forty (40) hours during each work week.

114.

During the Relevant Time Period, Defendants willfully failed to pay Chancy at one–and–one–half times her regular rate for work in excess of forty (40) hours during each work week.

115.

Chancy is entitled to payment of overtime in an amount to be determined at trial, in accordance with 29 U.S.C. § 216(b).

116.

As a result of the willful underpayment of overtime compensation as alleged above, Chancy is entitled to liquidated damages in accordance with 29 U.S.C. § 216(b).

117.

As a result of the underpayment of overtime compensation as alleged above, Chancy is entitled to her litigation costs, including her reasonable attorneys' fees in accordance with 29 U.S.C. § 216(b).

### 3. COUNT 3 - BREACH OF CONTRACT AGAINST LOVING HEART CAREGIVERS LLC ONLY

118.

The allegations in paragraphs 1-103 above are incorporated herein by reference.

119.

During the Relevant Time Period, Chancy and Loving Heart were parties to a contract of employment (hereafter "the Contract").

120.

The Contract provided that Loving Heart would pay Chancy for work that was performed by Chancy on behalf of and for the benefit of Defendant and would reimburse her for mileage driven in connection with her employment.

121.

Loving Heart's failure to pay Chancy for mileage she accrued during the period from June 28, 2021 through October 1, 2021 constitutes a material breach of the Contract.

122.

Loving Heart's failure to pay Chancy any wages for work she performed during the period from September 1, 2021 through October 1, 2021 constitutes a material breach of the Contract.

123.

As the direct and foreseeable result of these breaches, Chancy has sustained and continues to sustain damages in an amount to be proved at trial.

### 4.    COUNT 4 – QUANTUM MERUIT AGAINST LOVING HEART CAREGIVERS LLC ONLY

124.

The allegations in paragraphs 1-103 above are incorporated herein by reference.

125.

From on or about June 28, 2021 through October 1, 2021, Chancy served as a home health aide for Loving Heart.

126.

Chancy's services as a home health aide for Loving Heart as described above was valuable to Loving Heart.

127.

Loving Heart requested Chancy's service as a home health aide.

128.

Loving Heart knowingly accepted Chancy 's services.

129.

The receipt of Chancy's services for Loving Heart without compensation would be unjust.

130.

Chancy expected to be compensated at the time she provided her services as a home health aide.

131.

Chancy is entitled to a recover from Loving Heart the reasonable value of the unreimbursed mileage she drove as a home health aide, the exact sum to be determined at trial.

132.

Chancy is entitled to a recover from Loving Heart the reasonable value of her due but unpaid wages that she earned as a home health aide during the period from September 1, 2021 through October 1, 2021, in an amount to be determined at trial.

## 5.   COUNT 5 - PROMISSORY ESTOPPEL AGAINST LOVING HEART CAREGIVERS LLC ONLY

### 133.

The allegations in paragraphs 1-103 above are incorporated herein by reference.

### 134.

Loving Heart promised to pay Chancy in return for services she performed on its behalf.

### 135.

Loving Heart should have reasonably expected that Chancy would induce action in reasonable reliance of said promise, *i.e.,* serve as a home health aide for Loving Heart.

### 136.

Loving Heart's promise reasonably induced Chancy to act in reliance thereof, *i.e.,* to serve as a home health aide for Defendant, to her detriment.

### 137.

Chancy's service as a home health aide for Loving Heart conferred a benefit on Loving Heart.

### 138.

During the period from June 28, 2021 through October 1, 2021, Loving Heart failed to pay Chancy mileage in accordance with their promise.

139.

During the period from September 1, 2021 through October 1, 2021, Loving Heart failed to pay Chancy wages in accordance with their promise.

140.

Chancy relied on Loving Heart's promise to pay her mileage.

141.

Chancy's reliance on Loving Heart's promise to pay mileage was reasonable.

142.

Chancy relied on Loving Heart's promise to pay her wages.

143.

Chancy's reliance on Loving Heart's promise to pay her wages was reasonable.

144.

Injustice can only be avoided by enforcement of Loving Heart's promises.

145.

Chancy is entitled to a recover from Loving Heart the reasonable value of the mileage accrued in an amount to be determined at trial.

146.

Chancy is entitled to a recover from Loving Heart the reasonable value of the wages she earned from September 1, 2021 through October 1, 2021, in an amount to be determined at trial.

### 6.   COUNT 6 – ATTORNEYS' FEES PURSUANT TO O.C.G.A. § 13-6-11 AGAINST LOVING HEART CAREGIVERS LLC ONLY

147.

The allegations in paragraphs 1-103 above are incorporated herein by reference.

148.

In failing to pay Chancy any wages during the period from September 1, 2021 through October 1, 2021, Defendant Loving Heart has acted in bad faith, been stubborn and litigious and caused Chancy unnecessary trouble and expense, such that Chancy should be awarded her reasonable attorneys' fees and expenses of litigation pursuant to O.C.G.A. § 13-6-11.

WHEREFORE, Chancy respectfully prays:

1.  That her claims be tried before a jury;

2.  That she be awarded judgment against Defendants for due but unpaid minimum wages in an amount to be determined at trial against Defendants, jointly and severally, plus an additional like amount in liquidated damages;

3.  That she be awarded judgment against Defendants due but unpaid overtime compensation in an amount to be determined at trial against Defendants, jointly and severally, plus an additional like amount in liquidated damages;

4. That she be awarded judgment against Defendants for her costs of litigation, including her reasonable attorneys' fees from Defendants, jointly and severally pursuant to 29 U.S.C. §  216(b);

5. That she be awarded judgment against Defendants and awarded damages in an amount to be proved at trial against Loving Heart for the state law claims herein asserted in amounts to be proven at trial;

6. That she be awarded her attorneys' fees and expenses of litigation on her breach of contract claim pursuant to O.C.G.A. § 13-6-11;

7. That she be awarded nominal damages and prejudgment interest; and

8. For such other and further relief as the Court deems just and proper.


Respectfully submitted,

DELONG CALDWELL BRIDGERS
FITZPATRICK & BENJAMIN, LLC

101 MARIETTA STREET
SUITE 2650
ATLANTA, GEORGIA 30303
(404) 979-3150
(404) 979-3170 (f)
charlesbridgers@dcbflegal.com
benjamin@dcbflegal.com

/s/MITCHELL D. BENJAMIN
MITCHELL D. BENJAMIN
GA. BAR NO. 049888

/s/CHARLES R. BRIDGERS
CHARLES R. BRIDGERS
GA. BAR NO. 080791